## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                          **No. 1:13-cv-00407 WPJ/LFG**

**SUPREME COURT OF NEW MEXICO *et al.,***

      **Defendants.**

### DEFENDANTS' RULE 56(D) MOTION TO EXTEND TIME TO RESPOND TO  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, TO GRANT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR BASED ON THE EXISTING RECORD

COME NOW the Defendants, through their counsel of record, Paul J. Kennedy of Paul Kennedy & Associates, P.C., and hereby move for an extension of time to respond to Plaintiff's motion for summary judgment pending completion of specified discovery pursuant to Fed. R. Civ. P. 56(d), or, in the alternative, to grant judgment in Defendants' favor based on the existing record under Fed. R. Civ. P. 12(c) or 56.  Defendants' counsel has contacted opposing counsel regarding Plaintiff's position on this motion, and this motion is opposed.[1] In support of this motion, Defendants attach the declaration of undersigned counsel and the following exhibits: (1) Defendants' First Set of Requests for Admission, Interrogatories, and Requests for Production served November 4, 2013, (2) Defendants' proposed Notice of Deposition for Plaintiff's declarant, Sasha Siemel, and (3) the "Guidelines for Issuing Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of

---

[1]Pursuant to D.N.M. LR-Civ. 10.5, the parties have agreed that the exhibits to this motion may exceed 50 pages.  *See* Doc. 12.

Clients" contained in Section 9-13.410 of the United States Attorneys' Manual.  The legal

authority supporting this motion is set forth in further detail below.

I.      **THE COURT SHOULD EXTEND THE TIME FOR DEFENDANTS TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNTIL DEFENDANTS HAVE BEEN GIVEN A FAIR OPPORTUNITY TO CONDUCT AND COMPLETE THE REQUESTED DISCOVERY.**

Rule 56(d) provides that:  "If a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition" to a motion for

summary judgment, "the court may . . . allow time to obtain affidavits or declarations or to

take discovery."  Fed. R. Civ. P. 56(d).  Requests for more time to conduct discovery under

Rule 56(d) typically come from a plaintiff in a case where a defendant has obtained a stay

of discovery based on a qualified-immunity defense and concurrently files a motion for

summary judgment asserting that defense.  *See, e.g., Marin v. King*, No. 12cv448 WJ-LFG,

Doc. 25 (D.N.M. July 20, 2012) (citing *Ben Ezra, Weinstein & Co. v. America Online, Inc.*,

206 F.3d 980, 987 (10th Cir. 2000), and *Maxey ex rel. Maxey v. Fulton*, 890 F.2d 279, 282-

83 (10th Cir. 1989)).  Here, in contrast, it is the Plaintiff who is moving for summary

judgment at the outset of the case before any discovery has occurred, and there is no

immunity doctrine which shields the Plaintiff from discovery of the evidence bearing on its

own claims.  On the contrary, the Court has recently authorized discovery to proceed.[2]

---

[2]The present posture of this case differs from *Marin*, *Ben Ezra*, or *Maxey* because the assigned United States Magistrate Judge has already authorized discovery to proceed and indicated that the briefing schedule for Plaintiff's motion for summary judgment will be determined by the assigned United States District Judge (Doc. 30).  As there is no longer a stay of discovery in place, the question here is not whether to permit such discovery but when, in relation to that discovery, Defendants can fairly be required to respond to Plaintiff's motion for summary judgment.

Under these circumstances, Defendants must be afforded the opportunity to conduct discovery before they are required to respond to the merits of Plaintiff's motion for summary judgment. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 280-82 (4th Cir. 2013) (en banc) (concluding that it was "patently erroneous" for a district court to grant summary judgment in a plaintiff's favor without first affording the defendants an adequate opportunity for discovery as a precursor to any true analysis of the plaintiff's facial challenge).

The 2010 amendments to Fed. R. Civ. P. 56 allow Plaintiff to file its motion for summary judgment this early in the case; however, as a practical matter courts routinely respond to such premature motions by deferring a ruling until the non-movants are given a fair opportunity to conduct discovery and gather the evidence needed for their response brief. *See id.; Doe v. Abington Friends Sch.*, 480 F.3d 252, 256-59 (3rd Cir. 2007); *Information Handling Services, Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003). Here that opportunity has not occurred yet, as the Court authorized discovery to commence on November 1 2013, but set a briefing schedule that requires Defendants to respond to Plaintiff's motion only 20 days later, before Plaintiff has answered a single written discovery request, and before Defendants have been able to schedule a single requested deposition under the procedure set forth in D.N.M. LR-Civ. 30.1.

Plaintiff has provided no authority to support the proposition that a plaintiff is exempt from discovery regarding its own claims, on which it bears the burden of proof. In contrast to the typical situation where a *defendant* moves for summary judgment based on the defense

of qualified immunity, "a more stringent summary judgment standard applies" to the Plaintiff in this case because--as the movant--it is the *plaintiff* who bears the burden of proving both the facts required for this Court to exercise subject-matter jurisdiction, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and the facts required to prove the merits of its claims, *see Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  In its brief, Plaintiff acknowledges that there is a "presumption against finding preemption" in an "area traditionally regulated by the states, such as the regulation of the practice of law," and that this presumption can only be overcome by a "clear and manifest" showing to the contrary. (Doc. 13-1, at 23.)  The burden rests squarely on Plaintiff to prove that federal law preempts Rule 16-308(E).  *See Tarrant Reg. Water Dist. v. Herrmann*, 656 F.3d 1222, 1241-42 (10th Cir. 2011), *aff'd on other grounds*, 133 S. Ct. 2120 (2013).

This burden applies not only at trial; it has consequences for Plaintiff's motion for summary judgment as well.  When, as here, Plaintiff bears the burden of proof at trial on the claims on which it seeks summary judgment, Plaintiff must establish, as a matter of law, all essential elements of its claims beyond a reasonable doubt before Defendants can be required to bring forward any specific facts to rebut Plaintiff's case.  *See Pelt*, 539 F.3d at 1280; *United Missouri Bank of Kansas City, N.A. v. Gagel*, 815 F. Supp. 387, 391 (D. Kan. 1993).

In addition, Plaintiff bears the burden of proving each of the jurisdictional elements required to satisfy the "case or controversy" requirement embodied in Article III of the United States Constitution.  *See Lujan*, 504 U.S. at 561.  The Court's denial of Defendants' motion to dismiss does not change that burden, because like qualified immunity, a challenge

4

to subject-matter jurisdiction can be raised at any stage of the litigation, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006), and each jurisdictional element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *accord Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148-49 (2013). At the summary-judgment stage, Plaintiff can no longer rest on the mere allegations in its pleading, but must set forth by affidavit or other evidence specific facts evincing that all jurisdictional prerequisites for adjudicating its claims have been satisfied. *See id.*

It follows that before responding to Plaintiff's motion for summary judgment, Defendants should be permitted to conduct discovery not only on the merits of Plaintiff's claims, but also on the jurisdictional facts which Plaintiff must establish in order to proceed past the summary-judgment stage in this litigation. The specific issues on which Defendants seek discovery, as well as the requested methods of discovery and timetable for completing it are set forth in greater detail in the declaration attached hereto as Exhibit A.[3] The attached declaration also explains why Defendants lack access to the controverted facts without such discovery, and how that discovery will preclude summary judgment in Plaintiff's favor.

---

[3]In light of the concerns raised herein and in the attached declaration, Defendants respectfully submit that it would unproductive to submit a *pro forma*, skeletal preliminary response to Plaintiff's motion for summary judgment at this time. Without the requested discovery, Defendants' counsel is not in a position to present evidence to dispute the veiled allusions to various factual scenarios that are set forth in the "Statement of Material Facts" section of Plaintiff's memorandum in support of it motion. Nevertheless, as stated in Defendants' Answer (Doc. 33), Defendants intend to specifically controvert many of Plaintiff's alleged disputed facts, and wish to reserve a fair opportunity to develop the record necessary for compliance with D.N.M. LR-Civ. 56.1(b) before doing so.

## II.  ABSENT THE REQUESTED DISCOVERY, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF HAS NOT PRODUCED THE EVIDENCE OR AUTHORITY NECESSARY TO SUPPORT ANY OF THEIR CLAIMS OR THIS COURT'S EXERCISE OF JURISDICTION.

While Defendants maintain that further discovery is needed before it would be fair for the Court to entertain the prospect of granting summary judgment in Plaintiff's favor, Defendants do not seek such discovery for the purpose of unnecessarily prolonging this litigation or generating undue burden or expense for any party.  To the extent the Court is ready to dispose of this case by granting judgment as a matter of law in Defendants' favor, there are already adequate grounds for doing so, particularly if Plaintiff sticks to its position that no further discovery or evidence is necessary to support its claims.  Thus, if the Court decides the case on the basis of the existing record without the benefit of further discovery, then Defendants respectfully submit that there is no lawful alternative but to grant judgment in Defendants' favor as to all of Plaintiff's claims, because no material facts support them.

As Plaintiff admits, there is a "presumption against finding preemption" in an "area traditionally regulated by the states, such as the regulation of the practice of law," and this presumption can only be overcome by a "clear and manifest" showing to the contrary.  (Doc. 13-1, at 23); *see Herrmann*, 656 F.3d at 1242.  In this case, Plaintiff's burden of proof is made even heavier by Congress' enactment of 28 U.S.C. § 530B, the Tenth Circuit precedent rejecting Plaintiff's previous arguments on the issue in *United States v. Colo. Supreme Ct.*, 189 F.3d 1281 (10th Cir. 1999), Plaintiff's own guidelines for issuing attorney subpoenas attached hereto as Exhibit D, and Plaintiff's decision to pursue this lawsuit as a "facial

6

challenge" to Rule 16-308(E).

Based on the existing record at this time, Defendants are entitled to judgment as a matter of law under any of the following scenarios:

1.  The declaration accompanying Plaintiff's motion for summary judgment is insufficient on its face to meet the requirements for establishing standing or ripeness at the summary-judgment stage under *Lujan* and its progeny;

2.  If Plaintiff can squeak past the threshold requirements for an Article III case or controversy by phrasing its Complaint as a "facial challenge" to Rule 16-308(E), then the "strictly legal question" that Plaintiff presents has already been answered when Congress enacted 28 U.S.C. § 530B and when the Tenth Circuit interpreted that statute in *Colorado Supreme Court*, 189 F.3d at 1284-89; and

3.  Even if the Court strays from those prior directives of Congress and the Tenth Circuit, Plaintiff's claims fail as a "facial challenge" to Rule 16-308(E) because the rule has a plainly legitimate sweep and is not preempted in all of its applications.

### A.    Plaintiff's declaration fails to meet the requirements for establishing subject-matter jurisdiction at the summary-judgment stage.

For purposes of making a record without burdening the Court with the repetition of material presented earlier, Defendants adopt and incorporate by reference the jurisdictional arguments and authorities in the briefing on their motion to dismiss (Doc. 15, 27).  Applied to the declaration presented in support of Plaintiff's motion for summary judgment (Doc. 13-2), those arguments and authorities show that Plaintiff has not met its burden of establishing

this Court's subject-matter jurisdiction over the alleged controversy at the summary-judgment stage. *See Lujan*, 504 U.S. at 561-64; *Clapper*, 133 S. Ct. at 1147-49; *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009).

Consider, for example, what would happen if the environmental plaintiffs in *Lujan* or *Summers* submitted affidavits claiming an interest in visiting an endangered species' habitat at some indefinite time in the future, without identifying exactly which endangered species they were interested in visiting, where the proposed habitat was located, or when they planned to visit. Consider further what would happen if, upon being asked to fill in these specifics through deposition testimony or responses to written discovery requests, the environmental plaintiffs in *Lujan* or *Summers* refused to do so and asserted that such names, locations, and dates must remain shrouded in secrecy and not disclosed to the defendant despite the fact that those plaintiffs have filed a lawsuit in which they bear the burden of proof on all of their claims.

Surely the Court would throw out such an ill-conceived lawsuit in a heartbeat. Characterizing such a lawsuit as a "facial challenge" would not change that result, because the Supreme Court's most recent reiteration of the principles discussed in *Lujan* and its progeny makes clear that they apply to facial challenges as well. *See Clapper*, 133 S. Ct. at 1147-49. Why should the Court rule any differently in this case just because the Plaintiff is the United States rather than a private citizen? Where in Article III of the United States Constitution does it state that the courthouse doors automatically swing open for the government whenever it wants federal judges to act as a super-legislature by overriding a

federal statute (28 U.S.C. § 530B) as well as a state rule that was adopted through a formal rulemaking process with notice and comment?  Plaintiff has identified no such authority.

The purpose of the case or controversy requirement in Article III is to serve as a filter that prevents federal judges from taking on the role of legislators who decide matters presented to them based on their own freewheeling policy choices rather than the application of existing law to specific controverted facts.  That is why "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper*, 133 S. Ct. at 1146 (citations and internal quotation marks omitted).  Especially when, as here, the federal government itself is a plaintiff, it is wise to heed the admonition that  "[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." *Mapp v. Ohio*, 367 U.S. 643, 659 (1961); *accord State v. Haidle*, 2012-NMSC-033, ¶ 43, 285 P.3d 668.  It follows that neither Plaintiff's efforts to phrase its Complaint as a "facial challenge" nor its "ends justify the means" arguments can excuse the failure to meet the requirements for establishing a ripe Article III case or controversy at the summary-judgment stage.

**B.    This Court is bound by the express language of 28 U.S.C. § 530B and the Tenth Circuit precedent interpreting that statutory language.**

If the Court has already concluded that it must deny Defendants' motion to dismiss for lack of jurisdiction because the Court is bound by the Tenth Circuit's earlier holding in that case (Doc. 29, at 30), then surely the Court is equally bound by the Tenth Circuit's

subsequent ruling that the language in former Colorado Rule of Professional Conduct 3.8(f)[4]

qualifies as a "state rule governing attorneys" within the meaning of 28 U.S.C. § 530B and

therefore is not preempted by federal law  The Tenth Circuit reached that conclusion in the

second *Colorado Supreme Court* appeal notwithstanding its earlier pronouncements about

the former Colorado rule's actual or threatened impact on federal prosecutors or the cases

they  investigate  or  prosecute,  and  notwithstanding  the  earlier  discussion  of  alleged

differences  between  the  former  Colorado  rule  and  the  provisions  in  the  United  States

Attorneys' Manual regarding attorney-subpoenas (attached hereto as Exhibit D).

The text of the 2008 version of New Mexico's Rule 16-308(E) is the same as the

language from the former Colorado rule quoted in Footnote 2 of the *Colorado Supreme

Court* opinion, except the New Mexico rule does not contain a judicial preapproval

requirement.  *Compare* Rule 16-308(E) *with Colo. Supreme Ct.*, 189 F.3d at 1284 n.2.  Once

the Colorado Supreme Court removed the judicial preapproval requirement from the former

Colorado rule, the Tenth Circuit had no trouble concluding that the remaining language in

that rule qualified as a "state rule governing attorneys" under 28 U.S.C. § 530B and therefore

---

[4]This motion refers to Rule 3.8(f) as a "former rule" because, in amendments to the
Colorado Rules of Professional Conduct that went into effect on January 1, 2008, the rule
at issue in the *Colorado Supreme Court* litigation was renumbered as Rule 3.8(e) and was
again made applicable to grand jury subpoenas over the U.S. Attorney's protests.  As with
New Mexico's rules, the 2008 amendments to the Colorado rules came as part of a
systematic effort to reconcile them with the then-current edition of the ABA Model Rules of
Professional Conduct.  The history of Colorado's rulemaking process is documented on the
webpage of the Colorado Supreme Court's Rules of Professional Conduct Standing
Committee, available at: http://www.courts.state.co.us/Courts/Supreme_Court/Committees/
Committee.cfm?Committee_ID=24.

was not preempted under the Supremacy Clause. *See id.* at 1284-89. In reaching that conclusion, the Tenth Circuit answered the same "purely legal questions" that Plaintiff purports to bring before this Court in its facial challenge to Rule 16-308(E). *Id.* at 1284. Under "law of the circuit" principles, such prior circuit precedent, derived from a published opinion on the merits, will not be overturned "'absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court.'" *Wilkes v. Wyoming Dep't of Employment Div. of Labor Stds.*, 314 F.3d 501, 505 (10th Cir. 2002) (quoting *Burlington Northern & Santa Fe Ry. Co. v. Burton*, 270 F.3d 942, 947 (10th Cir. 2001)).

The Tenth Circuit also follows "the usual rule . . . that, once decided in a court of competent jurisdiction, merits of a legal claim are not subject to redetermination in another forum." *Northern Nat. Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991). "Under collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* This doctrine has been applied to bar the United States from relitigating such an issue. *See, e.g., Montana v. U.S.*, 440 U.S. 147, 153 (1979).

As with other litigants, precluding the United States from contesting matters that it has already had a full and fair opportunity to litigate "protects . . . adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54. Whether the final judgment resulting from the second *Colorado Supreme Court* opinion is

11

considered as precedent or given preclusive effect under the doctrines of collateral estoppel and law of the circuit, all of these important policy concerns weigh in favor of concluding that Rule 16-308(E) is not preempted by federal law for the same reasons already expressed by the Tenth Circuit when deciding that Colorado's former Rule 3.8(f) was a "state rule governing attorneys" under 28 U.S.C. § 530B.  The relevant parts of both rules contain the same language, and the "purely legal" preemption question that Plaintiff raises here was already answered in the Colorado case in which the same Plaintiff was a party and had a fair opportunity to litigate each of the arguments it now raises in this case.

Plaintiff tries in vain to distinguish the second *Colorado Supreme Court* opinion from the legal questions presented by its facial challenge to Rule 16-308(E) in this case, but all of those efforts fall short.  First, Plaintiff asserts that the Tenth Circuit "never analyzed whether the [former Colorado] rule intruded upon a field occupied by federal law or conflicted with federal substantive standards."  (Doc. 13-1, at 2; *id.* at 29-30.)  That assertion is incorrect. The reason that the Tenth Circuit focused on interpreting 28 U.S.C. § 530B is that, "as the parties recognize[d] in their supplemental briefs, the question whether [former Colorado] Rule 3.8 violates the Supremacy Clause now turns on whether the rule is a rule of professional ethics clearly covered by the McDade Act [28 U.S.C. § 530B], or a substantive or procedural rule that is inconsistent with federal law."  *Colo. Supreme Ct.*, 189 F.3d at 1284.  The Court's preemption analysis must be tethered to that act of Congress, because "'it is Congress rather than the courts that preempts state law.'"  *Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1985 (2011) (plurality opinion quoting *Gade v. Nat'l Solid Wastes*

*Mgmt. Ass'n*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring)).  Field preemption does not apply when, as here, a federal statute "explicitly disavows interference with state laws."  *see Tarrant*, 656 F.3d at 1241.  Because Congress has clearly spoken on the matter, the Court must decline Plaintiff's invitation to engage in "a 'freewheeling judicial inquiry into whether a state [rule] is in tension with federal objectives.'"  *Id.* (quoting *Gade*, 505 U.S. at 111).

Plaintiff next contends that the Tenth Circuit's analysis was "cursory" and in "clear error" because it did not contain the same itemized discussion of Federal Rules of Criminal Procedure 17 and 16(e), or Federal Rules of Evidence 402 and 501, that Plaintiff sets forth in its brief. (Doc. 13-1, at 30.)  That contention is also incorrect.  Plaintiff's itemized discussion of each rule is not only erroneous but unnecessary given the Tenth Circuit's analytical framework for determining whether the part of the former Colorado rule containing the same language as Rule 16-308(E) was an ethical rule covered by 28 U.S.C. § 530B as opposed to a substantive or procedural rule.

Under that framework, the Tenth Circuit first had to give meaning to the statutory language by discerning what Congress intended when it used the phrase "State laws and rules . . . governing attorneys" in 28 U.S.C. § 530B.  If the Court, "'*employing traditional tools of statutory construction*, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.'"  *U.S. v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1844 (2012) (quoting from *Chevron, U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984) with emphasis added).  The question whether a federal agency's interpretation of a statute should be given any deference does not even arise until after "the

13

devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004).

Because statutes are not interpreted in a manner that renders them superfluous or produces an absurd result, the Court cannot presume that the statutory language in 28 U.S.C. § 530B is mere surplusage that has no effect on federal prosecutors at all. *See  Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citing 2A N. Singer, *Statutes and Statutory Construction* § 46.06 at 181-86).  Surely the McDade Act is not "left loitering around the U.S. Code with no apparent purpose." *In re Dawes*, 652 F.3d 1236, 1242 (10th Cir. 2011).  The purpose of the statute is to make clear that state rules of professional conduct such as Rule 16-308(E) are not preempted by other provisions of federal law, and to foreclose the argument that such state ethical rules somehow conflict with federal rules of procedure or evidence merely because they may have some impact on the conduct of federal prosecutors.

This purpose becomes crystal clear when one considers the statute's history.  *Cf. Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 525 (2009) (examining the history of statutory terminology to aid in discerning its meaning).  When courts began enforcing the ethical rule against attorney contact with represented persons, *see* Rule 16-402 NMRA (also known as the "no contact" rule), the Department of Justice responded by attempting to carve out an exemption to that rule for federal prosecutors in the "Thornburgh Memorandum," which was later codified in the former version of 28 C.F.R. § 77.12 also known as the "Reno Rule."  *See United States v. Tapp*, No.  CR107-108, 2008 WL 2371422, at *4-6 (S.D. Ga. 2008).  The Reno Rule expressly stated that it was "intended to preempt the application of

14

state and local laws and rules" prohibiting federal prosecutors from contacting represented persons.  28 C.F.R. § 77.12 (repealed 1998).  The Conference of Chief Justices adopted a resolution urging its member states to disregard the Reno Rule, and the Eighth Circuit held that the Reno Rule was invalid because Congress never specifically delegated authority to the Attorney General to adopt that regulation.  *See Tapp*, 2008 WL 2371422, at *7 (citing *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998)).

The Court can take judicial notice that in the years immediately preceding the enactment of 28 U.S.C. § 530B, the controversy surrounding the "no contact" rule and the Thornburgh Memorandum came to light in several published opinions in this district and elsewhere, as disciplinary charges were brought in New Mexico against a federal prosecutor licensed here.  *See In re Howes*, 1997-NMSC-024, 123 N.M. 311, 940 P.2d 159; *In re Doe*, 801 F. Supp. 478 (D.N.M. 1992); *United States v. Ferrara*, 847 F. Supp. 964 (D.D.C. 1993), *aff'd* 54 F.3d 825 (D.C. Cir. 1995).  The *Doe* opinion rejected many of the same preemption arguments that Plaintiff raises in this case.  *See In re Doe*, 801 F. Supp. at 485-93.

In the course of rejecting the "argument that the DOJ is vested with the authority to interpret when and how the code of ethics applies to an AUSA", Chief Judge Burciaga strongly admonished that:  "The idea of placing the discretion for a rule's interpretation and enforcement solely in the hands of those governed by it not only renders the rule meaningless, but the notion of such an idea coming from the country's highest law enforcement official displays an arrogant disregard for and irresponsibly undermines ethics in the legal profession."  *Id.* at 486.  Chief Judge Burciaga predicted that the irony of

claiming the very lawyers empowered to enforce the law against others are themselves above the law "not only fuels public discontent with our system of justice, but the insolence with which the Government promotes this as official policy irresponsibly compromises the very trust which empowers it to act." *Id.* at 490.

Chief Judge Burciaga's strong words were remarkably prescient, as the same lawyer who was disciplined as a result of New Mexico's controversy over the "no contact" rule  was later disbarred by the District of Columbia Bar for further instances of unethical conduct that occurred while he was still working as a federal prosecutor.  *See In re Howes*, 52 A.3d 1 (D.C. Ct. App. 2012).  As Congress considered and debated the enactment of 28 U.S.C. § 530B in 1998, the Justice Department's Office of Professional Responsibility (OPR) investigated and found many more ethical violations committed by Mr. Howes while he worked as a federal prosecutor in the District of Columbia from 1993 to 1995. *See In re Howes*, 52 A.3d at 5. In conjunction with those ethical violations, Mr. Howes violated provisions of federal law that eventually resulted in postconviction relief in the form of significantly reduced sentences--which the government did not oppose--for several criminal defendants whom Mr. Howes prosecuted during that period.  *See id.* at 7 & n.8.  Because the OPR did not report the misconduct to the District of Columbia's bar counsel, the District of Columbia Bar's investigation was not launched until bar counsel later read about Mr. Howes' misconduct in newspaper coverage of the post-conviction litigation that erupted in the criminal cases in which that misconduct occurred.  *See id.* at 7.

It was against the backdrop of the Justice Department's behavior with respect to the

16

controversy regarding the application of the "no contact" rule to federal prosecutors that Congress enacted 28 U.S.C. § 530B on October 21, 1998.  That new law became effective 180 days later.  In addition to expressly requiring federal prosecutors to comply with state ethical rules, 28 U.S.C. § 530B(b) directs the Attorney General to "make and amend rules of the Department of Justice to assure compliance with this section."  Considered in the historical context described above, the clear intent of requiring the Attorney General to "amend" as well as "make" rules to "assure compliance" with the statute is to repeal the "Reno Rule" formerly codified at 28 C.F.R. § 77.12 and carry out Congress' directive that state ethical  rules (including the "no contact" rule) apply to federal prosecutors so that the debacle exemplified by the Howes litigation would not be repeated.

The Attorney General responded to that congressional directive on the date 28 U.S.C. § 530B went into effect by replacing the "Reno Rule" with an interim rule now codified at 28 C.F.R. part 77.  *See* 64 Fed. Reg. 19,273 (Apr. 20, 1999).  Section 77.3 of the interim rule parrots the statute by directing that "attorneys for the government shall conform their conduct and activities to the state rules and laws . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that state, as these terms are defined in § 77.2 of this part."  Section 77.2(h) of the interim rule defines the phrase "state laws and rules . . . governing attorneys" in relevant part to mean "rules enacted or adopted by any State . . . that prescribe ethical conduct for attorneys *and* that would subject an attorney, whether or not a Department [of Justice] attorney, to professional discipline, such as a code of professional responsibility."

17

Rule 16-308(E) is clearly such a rule.  On what basis, then, does the Plaintiff in this case ask the Court to circumvent not only the statutory directive that Plaintiff must "assure compliance" with 28 U.S.C. § 530B, but also the language of its own rule parroting the statute?  According to Plaintiff, the answer lies in one of the subparts of the definitions the Attorney General placed in 28 C.F.R. § 77.2(h)(1), which states that the statutory phrase "state laws and rules . . . governing attorneys" does not include "[a]ny statute, rule, or regulation which does not govern ethical conduct, such as rules of procedure, evidence, or substantive law, whether or not such rule is included in a code of professional responsibility for attorneys."  *Id.*  Plaintiff then jumps to the conclusion that any state rule which might affect a federal prosecutor's conduct or behavior with respect to utilizing a federal rule of evidence or procedure is also outside the purview of 28 U.S.C. § 530B.

The statute itself, however, contains no language stating that federal prosecutors may exempt themselves from state rules governing attorneys by reinterpreting them as "rules of procedure, evidence, or substantive law," much less that any conduct or behavior which may relate in some tangential way to a federal rule of evidence or procedure is also exempt from such state ethical rules.  *See* 28 U.S.C. § 530B.  As noted above, Chief Judge Burciaga's published opinion rejecting the government's argument that it had the discretion to decide when to exempt its own lawyers from state ethical rules was already a matter of record in the controversy surrounding Mr. Howes before Congress enacted the statute.  In light of that historical record, it is hard to fathom that Congress intended to accept the very argument that the *Doe* opinion rejected and delegate rulemaking authority to make discretionary

18

exemptions from state ethical rules when enacting a law that says the exact opposite.

The United States Supreme Court has articulated a number of cogent reasons why such agency interpretations of a statute are wrong and are not entitled to any deference in situations like this one.   First of all, a federal official's interpretation of a statute "must be promulgated pursuant to authority Congress has delegated to the official" before it qualifies for any deference under *Chevron* and its progeny. *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006).  "The starting point for this inquiry is, of course, the language of the delegation provision itself.  In many cases authority is clear because the statute gives an agency broad power to enforce all provisions of the statute." *Id.*  But in other cases, the "delegation provision" in the statute only "gives the Attorney General limited powers, to be exercised in specific ways." *Id.*  Here, for example, Congress only delegated authority to assure the Justice Department's compliance with 28 U.S.C. § 530B, not broader and more general discretion to exempt its own attorneys from the statutory mandate directed at them by redefining state law. *See Gonzales*, 546 U.S. at 256-59 (contrasting examples of broader delegation of authority and citing *U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001));  *U.S. ex rel. O'Keefe*, 132 F.3d at 1257 (rejecting the Attorney General's earlier attempts to justify the "Reno Rule" under statutes that lacked specific delegation provisions for that rule).

The authority to "assure compliance" with 28 U.S.C. § 530B is not the same as the authority to "decide what the law says." *Gonzales*, 546 U.S. at 264.  Were it otherwise, the Attorney General could use his limited authority to "assure compliance" with 28 U.S.C. § 530B as a pretext to "authoritatively interpret" the scope and effect of all state ethical rules,

19

despite the obvious constitutional problems in his doing so. *Gonzales*, 546 U.S. at 264. Such concerns about the constitutionality of a federal agency's interpretation of a statute are "heightened where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power." *Solid Waste Agency of N. Cook County*, 531 U.S. 159, 173 (2001). Regulating the practice of law is such a traditional state power, as Plaintiff readily admits. *See* Doc. 13-1, at 23.

Even in those instances where a federal official has been delegated some authority to interpret ambiguous language in a statute, that official's rulemaking does not warrant deference if it merely parrots the statutory language, *see Gonzales*, 546 U.S. at 257, or if the rule is just as ambiguous as the purported ambiguity in the statute, *see Coeur Alaska, Inc. v. SEACC*, 557 U.S. 261, 278 (2009). The rule stated in 28 C.F.R. § 77.3 merely parrots the statutory language. Thus, to the extent there is any ambiguity in the statute, the agency rule just repeats that ambiguity and provides no grounds for deference to the interpretation offered in Plaintiff's Complaint.

The same conclusion follows from the principle of statutory interpretation according to which "'Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions--it does not, one might say, hide elephants in mouseholes.'" *Gonzales*, 546 U.S. at 267 (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)). Plaintiff's interpretation of 28 U.S.C. § 530B runs counter to this principle because it would use the mousehole of the provision delegating authority to "assure compliance" with the statute to hide an elephant granting unfettered discretion for the agency

to deny responsibility for complying with all state rules of professional conduct under the fiction that they are not really "ethical" rules if the conduct they regulate might relate in some way to a federal prosecutor's use of a federal rule of evidence or procedure.

Plaintiff's interpretation presents such an "elephant in a mousehole" because it would affect many rules of professional conduct in New Mexico and other states. Rule 16-308(E) is not the only state ethical rule which, according to Plaintiff's theory, might affect a federal prosecutor's conduct as it relates to his or her use of federal rules of evidence or procedure. The "no contact" rule embodied in Rule 16-402, for example, could affect Plaintiff's use of evidence under that theory, insofar as it is possible that a federal prosecutor complying with Rule 16-402 would refrain from gathering otherwise unprivileged, relevant, and admissible evidence by speaking to a person represented by counsel. Similarly, it is possible that a federal prosecutor complying with the prohibition on deceit or misrepresentation in Rule 16-804(C) might not use such prohibited methods to gather otherwise admissible evidence or serve an otherwise valid subpoena. The same may be said of the ethical prohibitions against making false or misleading communications about a lawyer's services, *see* Rule 16-701 NMRA, or making use of information about a former or prospective client to that person's disadvantage, *see* Rule 16-109(C), 16-118 NMRA.

The list does not stop there, because there are many rules of professional conduct which run parallel to, or occur in the context of, a lawyer's application of rules of evidence or procedure. For example, prosecutors may decide that in order to avoid the risk of professional discipline, they will not utilize court procedures (such as jury selection) in a

manner that intentionally manifests invidious discrimination.  *See* Rule 16-300 NMRA.  Or they may decline to assert a frivolous issue in motion practice subject to procedural rules. *See* Rule 16-301 NMRA. Or they may decline to offer otherwise relevant, admissible, and unprivileged evidence they know to be false. *See* Rule 16-303(A) NMRA.  Or they may decline to serve a frivolous discovery request or subpoena.  *See* Rule 16-304(D) NMRA.

If the test for determining whether state rules of professional conduct are preempted by federal rules of evidence or procedure is simply whether there is an abstract possibility that such state rules might have an incidental impact on a federal prosecutor's decision-making or behavior, then all state rules of professional conduct would be preempted, and 28 U.S.C. § 530B would be "left loitering around the U.S. Code with no apparent purpose," as the Tenth Circuit described in *Dawes*, 652 F.3d at 1242.  Similarly, Defendants would be left loitering with no apparent purpose for licensing attorneys who practice as criminal prosecutors in federal court, because those attorneys would get the benefit of that license without being subject to the State's mechanisms for enforcing the ethical rules that go along with it.  Under Plaintiff's interpretation of 28 C.F.R. part 77, federal prosecutors could pick and choose the state ethical rules, if any, for which they want an exemption, and they could grant themselves such exemptions simply by claiming that the conduct regulated by the rule in question somehow theoretically affected their decision-making with respect to a federal rule of evidence or procedure.

Congress did not intend that absurd result when it passed 28 U.S.C. § 530B in the wake of the well-documented controversy surrounding the "no contact" rule.  The Tenth

Circuit recognized as much when it upheld Colorado's former Rule 3.7(f) against a preemption challenge in *Colorado Supreme Court*, 189 F.3d at 1284-89. This Court should do the same by recognizing 28 U.S.C. § 530B and that Tenth Circuit opinion as grounds for concluding that New Mexico's Rule 16-308(E) is not preempted by any of the federal laws asserted in Plaintiff's Complaint.

Plaintiff points to no relevant changes in the law since the Tenth Circuit opinion was decided on September 1, 1999. As Defendants have already explained in briefing their motion to dismiss (Doc. 15, 27), which is incorporated herein by reference, the First Circuit's subsequent opinion in *Stern v. U.S. Dist. Ct.*, 214 F.3d 4 (1st Cir. 2000) is distinguishable because that case only decided the fate of a local rule of *federal* procedure adopted by United States District Judges in the District of Massachusetts, which contained a judicial pre-approval requirement. *See id.* at 9-10. The "core issue" presented in *Stern* was "whether the district court had the power to adopt" its local rule in derogation of the Federal Rules of Criminal Procedure, which does not contain a judicial pre-approval requirement for subpoenas. *Id.* at 13. In contrast to the Massachusetts local rule, New Mexico's Rule 16-308(E) does not contain a judicial pre-approval requirement and has not been adopted by this Court as a local rule of federal procedure. New Mexico's Rule 16-308(E) is not a rule of evidence or a matter of substantive or procedural law because both New Mexico courts and the Tenth Circuit have made clear that such rules of professional conduct do not create a cause of action which an attorney might assert as grounds for quashing a subpoena. *See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 762-63, 750 P.2d 118,

123-24 (1988); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1186 (10th Cir. 2010).

Rather than supporting Plaintiff's claims, the Tenth Circuit's opinion in the grand jury case cited above is entirely consistent with Defendants' position in this litigation. In addition to confirming that Rule 16-308(E) does not create a cause of action which a subpoenaed attorney can use to quash a federal subpoena in the grand-jury context or elsewhere, that Tenth Circuit opinion also shows that it is possible to redact the record of grand-jury proceedings without compromising grand-jury secrecy concerns. *See In re Grand Jury Proceedings*, 616 F.3d at 1175-76 & n.1.

Lacking a judicial pre-approval requirement, a substantive cause of action, or a corresponding local rule of federal procedure, Rule 16-308(E) does not unlawfully infringe upon the function of a federal grand jury. Plaintiff's arguments about grand jury secrecy do not concern the substance of Rule 16-308(E) itself, but instead raise questions about how such secrecy claims can be accommodated in the context of an investigation or prosecution under New Mexico's Rules Governing Discipline. Like the Tenth Circuit opinion cited in the preceding paragraph, Plaintiff's own procedures outlined in the United States Attorneys' Manual attached hereto as Exhibit D acknowledge that there are ways of accommodating grand-jury secrecy concerns in the Assistant Attorney General's supervisory review of an attorney's grand-jury subpoena practices.

New Mexico's Rules Governing Discipline similarly provide that: "Investigations, examinations and verifications shall be conducted so as to preserve the private confidential nature of the lawyer's records insofar as is consistent with these rules and law." Rule 17-

307(A) NMRA; *see also* Rule 17-304 NMRA.  There are even provisions for appointment of special counsel or a special panel of the Disciplinary Board when necessary.  *See* Rule 17-307(F).  Thus, if the issue of grand-jury secrecy were to arise in the context of an actual attorney disciplinary investigation, there are plausible scenarios under which the Rules Governing Discipline could be subject to a limiting construction that would avoid the constitutional question of whether grand-jury secrecy preempts the application or enforcement of Rule 16-308(E) in that context.

New Mexico courts follow the doctrine of constitutional avoidance, under which state rules and statutes are to be interpreted in a manner that does not raise constitutional concerns. *See State v. Pangaea Cinema*, 2013-NMSC-044, ¶ 18, 310 P.3d 604.  Plaintiff's Complaint presumes the opposite:  that Defendants will go out of their way to interpret Rule 16-308(E) in conflict with federal law in violation of the Supremacy Clause.  That presumption simply does not apply in a facial challenge to the rule, and the details of how an investigation or prosecution against a federal prosecutor accused of violating Rule 16-308(E) would accommodate grand-jury secrecy concerns is better left for an as-applied challenge to the rule, where the Court and counsel would have the benefit of a specific factual context.

Insofar as Plaintiff has obtained the benefit of relaxed requirements for standing, ripeness, and other justiciability concerns by limiting its claims to a facial challenge, Plaintiff is judicially estopped from switching to an as-applied challenge in the middle of the litigation.  *See Queen v. TA Operating, Inc.*, Nos. 11-8090, 11-8098, ___ F.3d ____, 2013 WL 4419322 (10th Cir. Aug. 20, 2013).  The same principle applies insofar as Plaintiff now

demands a more "thorough" analysis than the Tenth Circuit provided in the Colorado case, when Plaintiff has limited its Complaint to a facial challenge that purports to present a purely legal question. To the extent this Court has jurisdiction to respond to such purely legal questions about Rule 16-308(E), the Tenth Circuit has already answered them, and this Court is bound to follow the law of the circuit.

      **C.**     **Rule 16-308(E) survives Plaintiff's facial challenge because it has a plainly legitimate sweep and is not invalid in all instances.**

If the Court wants to go further than the precedent established by the *Colorado Supreme Court* opinion and the express directive of Congress in 28 U.S.C. § 530B, then the obvious starting point for Plaintiff's "facial challenge" is to apply the *Salerno* test, which other courts have routinely applied to preemption claims. *See Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580, 588-89 (1987) (applying the *Salerno* test to a facial challenge in a federal preemption case); *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 579-80 & n.3 (9th Cir. 2008) (en banc) (concluding that the *Salerno* rule applies "with full force" when facial challenges are brought in federal preemption cases); *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011) (concluding that the *Salerno* test articulated in *Granite Rock Co.* generally applies to facial challenges in federal preemption cases); *Air Transport Ass'n of Am., Inc. v. United States Dep't of Transp.*, 613 F.3d 206, 213, 216 (D.C. Cir. 2010) (reaching the same conclusion under *Reno v. Flores*, 507 U.S. 292, 301 (1993)).

Even under the more relaxed standard that courts sometimes use in facial challenges

arising under the First Amendment, it is already evident that Rule 16-308(E) survives such a facial challenge because it has a "'plainly legitimate sweep.'"  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Wash. v. Glucksberg*, 521 U.S. 702, 739-40 and n.7 (1997)); *accord Crawford v. Marion County Election Bd.*, 553 U.S. 181, 202-03 (2008).   One significant difference between First Amendment cases and preemption cases is that First Amendment defendants are charged with the burden of proving that a governmental restriction on speech or access to a public forum is narrowly tailored to serve a compelling governmental interest, *see, e.g., Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012), while that burden falls on the plaintiff in a preemption case, *see Herrmann*, 656 F.3d at 1242.   Nevertheless, even if one eschews the *Salerno* test in preemption cases too, Rule 16-308(E) easily survives Plaintiff's facial preemption challenge because it has a plainly legitimate sweep that is evinced by Plaintiff's own "Guidelines for Issuing Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients" contained in Section 9-13.410 of the United States Attorneys' Manual.  As comparison of those guidelines, which are attached as Exhibit D, shows that they overlap substantially with the prohibitions in Rule 16-308(E).

WHEREFORE Defendants move this Court to extend the time for Defendants to respond to Plaintiff's Motion for Summary Judgment until after completion of specified discovery under Fed. R. Civ. P. 56(d) or, in the alternative, to grant judgment as a matter of law in Defendants' favor under Fed. R. Civ. P. 12(c) or 56 based on the existing record. Defendants request such additional relief in their favor as the Court deems just and proper.

Respectfully Submitted,

  /s/  Paul J. Kennedy                          
Paul J. Kennedy (pkennedy@kennedyhan.com)
PAUL KENNEDY & ASSOCIATES, P.C
201 12th Street NW
Albuquerque, New Mexico  87102
(505) 842-8662

I hereby certify that a copy of this motion and the attached
exhibits was delivered via CM/ECF to all counsel of record
on the date indicated on the Notice of Electronic Filing.

  /s/  Paul J. Kennedy                        
Paul J. Kennedy
PAUL KENNEDY & ASSOCIATES, P.C.
201 12th Street NW
Albuquerque, New Mexico 87102
(505) 842-8662